UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

|  |  |
|---|---|
| KIMBERLY ANDREWS,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.  )<br>  )<br>EAST TENNESSEE CHILDREN'S  )<br>HOSPITAL ASSOCIATION, INC.,  )<br>d/b/a EAST TENNESSEE CHILDREN'S  )<br>HOSPITAL  )<br>  )<br>    Defendant.  )<br>  ) | Case No. 1:07-CV-288<br><br>Chief Judge Curtis L. Collier |

## MEMORANDUM

Before the Court is a motion for summary judgment (Court File No. 31) and supporting memorandum (Court File No. 32) by Defendant East Tennessee Children's Hospital, Inc. ("Defendant"). Plaintiff Kimberly Andrews ("Plaintiff") filed a response in opposition to the summary judgment motion (Court File No. 35) and Defendant filed a reply (Court File No. 38). For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Defendant's motion for summary judgment.

**I.    RELEVANT FACTS**

Defendant employed Plaintiff, an African-American woman, as an emergency room technician from approximately June 1990 until her termination on approximately April 19, 2006

(Andrews Dep. at 100).[1] The parties do not dispute that on the evening of April 8, 2006, two children arrived in Defendant's emergency room on spine boards, victims of an automobile accident, while Plaintiff was on duty. Defendant's policy was to keep an emergency room employee with such patients until the patients were cleared from the spine board by a physician (Ashford Dep. at 49), as failure to do so could result in a spinal injury victim's choking or aspiration if the victim vomited without being able to roll over (Battershell Dep. at 38).

What happened next forms the basis for the dispute over which this lawsuit arose. Plaintiff contends Tammy Ashburn, a staff nurse, asked her to sit with one of the victims while he was lying on the spine board (Andrews Dep. at 171). Plaintiff says she did so until a physician entered the room and examined first one, then the other, victim. According to Plaintiff, the physician removed both spine boards from the victims, and only thereafter did she leave the room (*id.* at 172). Plaintiff asserts while she was in the room waiting with the victims on the spine boards, she never stepped out of the room, except to walk to the doorway and ask another emergency department employee, Spring Brandau, for help moving one of the children to another room (*id.* at 175).

Defendant's account of the evening's events varies significantly. Ashburn testified she was called away from her post to assist in a CT (computed tomography) scan. Upon returning, she saw one of the patients standing in the doorway of his room, having removed himself from his spine board (Ashburn Dep. at 19). When Ashburn asked Brandau what happened, she said the patient wanted to be moved to the room where his cousin (apparently the second victim) was, and between being

---

[1] Both parties have filed several excerpts of deposition testimony as exhibits to Defendant's motion for summary judgment, Plaintiff's response, and Defendant's reply. For ease of identification, the Court will refer to pages in the deposition transcripts themselves, rather than to exhibits appended to the court files.

2

moved there and Ashburn's arrival on the scene, the patient had removed himself from the spine board (*id.* at 19–20). Ashburn further testified Plaintiff was "already gone" from the room when Ashburn saw the patient off the spine board, standing in the doorway (*id.* at 24). Ashburn testified Plaintiff's absence from the patient's room while he was on the spine board "could have been potentially" a serious event endangering the patient's safety (*id.* at 39).

As a result, that evening Ashburn sent an e-mail to Angie Bowen, the Nurse Manager, summarizing her knowledge of the incident. Ashburn wrote, "Doris [McConnell, a nurse-in-training] and I had to take one of our patients to CT and left [Plaintiff] to sit with another patient who was immobilized when we came back she was not with that patient and he had removed himself from his collar and spine board" (Court File No. 34 Ex. 5, at 3). Bowen initiated an investigation in which she discussed the incident with Brandau, Ashburn, McConnell, and the attending physician, Dr. Robert Dickson (Bowen Dep. at 50–51).[2] After these discussions, Bowen and Sheri Smith, Bowen's supervisor, approached Paul Bates, Defendant's Vice President of Human Resources, to report the incident and discuss Plaintiff's potential termination (Bates Dep. at 22). As part of Defendant's process for employee terminations, Bates also involved Laura Barnes, Defendant's Vice President of Patient Care Services (*id.* at 23). Bowen, Smith, and Barnes told Bates they felt the situation was serious and could have endangered the patient (*id.* at 28). Based on their statements and the results of Bowen's investigation, the group decided to terminate Plaintiff (*id.* at 30).[3] Per Defendant's

---

[2]As discussed in Part III.A.3., Plaintiff disputes the adequacy of the procedures used in that investigation.

[3]Defendant also justifies its termination of Plaintiff based on a number of reports of Plaintiff's unsatisfactory job performance. Shortly prior to Plaintiff's termination, Bowen wrote she received verbal and written complaints about Plaintiff's performance, including failure to carry out routine duties, reading a magazine while there was work to be done, having to be repeatedly asked

3

practice, the group met with Plaintiff to hear any evidence which could change the decision (*id.*); having not heard such evidence, Defendant terminated Plaintiff on April 19, 2006 (Court File No. 33 Ex. 15). This suit followed with the filing of Plaintiff's amended complaint on March 26, 2008 (Court File No. 21).

**II.     STANDARD OF REVIEW**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the movant to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court must view the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). It is the Court's duty to determine if the non-movant has presented sufficient evidence to raise issues of fact; however, the Court does not weigh evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

At the same time, the purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 (advis. comm.

---

to perform duties, and leaving the department without informing colleagues of her whereabouts (Bowen Dep. Ex. 1). These reports are relevant to Defendant's assertion it had a legitimate, nondiscriminatory justification for terminating Plaintiff, *see* Part III.A.2.

4

notes) (1963). The movant must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324. A scintilla of evidence is not enough; the non-movant must present evidence sufficient for a jury to reasonably find for its side. *Liberty Lobby*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The movant is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. It is the Court's role to decide if a fair-minded jury could return a verdict for the non-moving party, or if "the evidence . . . is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.  DISCUSSION

Plaintiff's amended complaint (Court File No. 21) states claims for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 ("THRA"); and for gender and pregnancy discrimination under the 1978 Pregnancy Discrimination Act ("PDA") and Title VII. Claims of discrimination brought pursuant to the THRA are evaluated under the same analytical framework and federal case law that applies to claims brought pursuant to Title VII. *Frizzell v. Sw. Motor Freight*, 154 F.3d 641, 646 (6th Cir. 1998); *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 834–35 (Tenn. 1997), *overruled on other grounds by Parker v. Warren County Util. Dist.*, 2 S.W.3d 170 (Tenn. 1999); *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996). Thus, the Court will analyze Plaintiff's state and federal claims simultaneously under the Title VII framework.

### A. Race Discrimination

Plaintiff contends she was fired because she was the only African-American technician in Defendant's emergency department (Court File No. 35 at 2; Smith Dep. at 57).[4] Defendant counters Plaintiff was fired solely for unsatisfactory job performance, including leaving the automobile accident victim unsupervised on April 8, 2006.

Claims for race discrimination under Title VII may be established in one of two ways. A plaintiff "may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995) (citations omitted). "The direct evidence and circumstantial evidence paths are mutually exclusive; the plaintiff can meet her burden with either method of proof." *Weberg v. Franks*, 229 F.3d 514, 523 (6th Cir. 2000). Either way, a "[p]laintiff's burden with respect to establishing a prima facie case is not onerous." *Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Even viewing the evidence in the light most favorable to Plaintiff, she does not offer direct evidence of discriminatory animus by Defendant's supervisors or her co-workers at the hospital sufficient to oppose the motion for summary judgment. Plaintiff does allege one incident where a

---

[4]It is not entirely clear from Smith's and Bates's depositions how many, if any, other African-American employees worked in the emergency department in 2006, though Smith testified she was unaware of any African-American employees working as emergency room technicians at the time Plaintiff was terminated (Smith Dep. at 57; Bates Dep. at 17). In a summary judgment motion, the Court must draw all reasonable inferences on factual issues in the non-movant's favor. *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d 587, 598 (6th Cir. 2001). Here, the Court concludes, for summary judgment purposes, that Plaintiff was the only African-American technician in Defendant's emergency department.

coworker asked her if he could refer to her using a racial epithet; after she and another employee complained of the incident to a supervisor, the offending coworker was reprimanded and subsequently terminated (Andrews Dep. at 221; Battershell Dep. at 22).[5] This, however, is the only such incident of direct race-based animus Plaintiff alleges, and it occurred several years before her April 2006 termination. "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper v. Potter*, 505 F.3d 508, 516 (6th Cir. 2007) (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)). "Such evidence does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (internal quotation omitted). Here, Plaintiff's co-worker's use of a racial epithet was offensive, but because it appears to be an isolated event which happened long before the April 8, 2006 incident, it falls short of compelling a conclusion that racial discrimination motivated Plaintiff's firing.

Because Plaintiff has not presented sufficient direct evidence her firing was motivated by racial animus, the Court will evaluate her claim under the circumstantial evidence framework. A circumstantial disparate treatment claim must be evaluated using the burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined by *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). To establish a prima facie claim of

---

[5]Deposition testimony indicates, however, that the offending employee may have been terminated for reasons other than the racial epithet (Battershell Dep. at 22–23).

7

race discrimination, the plaintiff must demonstrate (1) she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for the position in question, and (4) she was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

### 1. Prima Facie Case

There is no dispute Plaintiff meets the first two prongs of the *Wright* test. As an African-American woman, she is a member of a protected class. And by her termination in April 2008—the fact of which Defendant does not dispute—Plaintiff has demonstrated an adverse employment action. *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007) ("An employer's decision to discharge an employee is a classic example of an adverse employment action."). It is on the *Wright* test's third and fourth prongs that Plaintiff and Defendant disagree.

#### a. Plaintiff's Qualifications

As to the third prong, Defendants claim Plaintiff was a "marginal" employee when she was discharged (Bates Dep. at 34) and Plaintiff asserts she was a qualified employee who met all expectations (Court File No. 35 at 13). Specifically, supervisor Smith noted Plaintiff's employee evaluation scores were falling and she needed to improve her team member skills (Smith Dep. at 66). For her part, Plaintiff produces evidence of satisfactory scores on a 2005 employee evaluation, which, as Smith testified, indicate Plaintiff was "performing at an effective level, meeting expectations, and fulfilling her job requirements." (Smith Dep. at 63 & Ex. 16.) The previous year, Plaintiff also received a satisfactory score and was told she was "a role model and respected member of the [emergency department] team." And five days before her termination, another charge nurse wrote an email in which she said Plaintiff assisted "everywhere and functioned well with the team." (Smith

Dep. Ex. 11.)

"At the prima facie stage, a court should focus on a plaintiff's *objective* qualifications to determine whether he or she is qualified for the relevant job." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003) (en banc) (emphasis in original). A plaintiff need only present "credible evidence that she continued to possess the *objective qualifications* she held when she was hired." *Id.* (quoting *MacDonald v. E. Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121 (10th Cir. 1991)) (emphasis in original). Moreover, "[a]lthough the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576. Here, Defendant required its employees to possess a high school education, six months experience, and ability to "meet the demands of an active position." Apparently, Defendant does not dispute Plaintiff possessed those qualifications. Necessary on-the-job skills included certain patient care procedures, specimen collection, and assisting other team members (Smith Dep. Ex. 16). Even though Plaintiff's evaluation scores may have dropped over the three-year period which Defendant considered, she still scored in the satisfactory range—indicating she met the foregoing requirements—in all the job evaluations which are evidence before the Court. Taking this evidence in the light most favorable to Plaintiff, she was qualified for the position from which she was terminated in April 2006.

### b. Differential Treatment

The fourth prong, different treatment than similarly-situated individuals, requires that the employees "with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without

9

such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). For Plaintiff's first allegation of differential treatment, she testified she was told by a nurse, Tiffany Holt, that a white emergency room technician left a patient alone on a spine board; even after the incident was reported to a charge nurse, no investigation was initiated nor any disciplinary action taken (Andrews Dep. at 238–40). Defendant counters that Plaintiff's account of the incident is based on inadmissible hearsay, and that Plaintiff herself is unaware whether any of the incidents were reported to management (Court File No. 38 at 2).

Evidence supporting a motion for summary judgment or response "must be made on personal knowledge [and] set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1). "Hearsay evidence, as well as evidence which is irrelevant to the issue presented, must be disregarded." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991)). Plaintiff's repetition of what another person told her is an out-of-court statement offered for the truth of the matter asserted, which does not fall into a recognized hearsay exception (such as an admission by a party-opponent) or exception (such as a statement against interest). *See* Fed. R. Evid. 801, 801(d)(2), 804(b)(3). Thus, the Court will treat Holt's statement as inadmissible hearsay not within any exception, and will not consider it part of Plaintiff's proof on summary judgment because it does not "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(e)(1).

Defendant is incorrect, however, to argue this hearsay statement is the "only" evidence supporting Plaintiff's claim of harassment (Court File No. 38 at 2). Plaintiff also testified she herself

10

witnessed other incidents where patients in the emergency department were left alone on spine boards (Andrews Dep. at 240). A witness may, of course, testify to incidents of which she has personal knowledge. *See* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). Plaintiff's recollection of these incidents and the circumstances under which they occurred involves an assessment of Plaintiff's credibility and memory which must be reserved for the trier of fact. That is, Plaintiff's personal recollection of incidents where other employees were not disciplined for leaving patients alone on spine boards creates a genuine issue of material fact regarding whether she was terminated for reasons other than performance—namely, her race. As such, Plaintiff has demonstrated a genuine issue of differential treatment. Recall, too, that "[t]he prima facie requirement for making a Title VII claim is not onerous, and poses a burden easily met. The prima facie phase merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's treatment of the plaintiff." *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1999) (internal quotation marks, citations, and brackets omitted). Under this standard, Plaintiff has made out a prima facie claim of race discrimination.[6]

### 2. Legitimate, Nondiscriminatory Reasons

Because Plaintiff has established a prima facie case, Defendant bears the burden of production to put forth a "legitimate, nondiscriminatory reason" for Plaintiff's termination. *Wright*, 455 F.3d

---

[6] Plaintiff's response (Court File No. 35) lists other incidents of alleged differential treatment, to which Defendant replies with contrary evidence (Court File No. 38). The Court need not consider those incidents because viewing the other evidence in the light most favorable to Plaintiff, she has sufficient evidence for her prima facie claim.

11

at 706. Defendant has articulated at least two legitimate, nondiscriminatory reasons: Plaintiff left a patient alone on a spine board on April 8, 2006, thereby creating a potentially serious safety issue; and Plaintiff exhibited consistent difficulties with attention to her duties. "These constitute legitimate, nondiscriminatory reasons . . . because they are reasons, supported by admissible evidence, which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *Id.* at 707 (quotation marks and emphasis omitted).

### 3. Pretext

Because Defendant has met its burden of production, Plaintiff must show Defendant's reasons are a "pretext for discrimination." *Id.* A plaintiff can establish pretext by demonstrating the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge. *Vincent*, 514 F.3d at 497. To determine whether an employer "reasonably relied on the particularized facts then before it" when it made its termination decision, "the decisional process used by the employer [need not] be optimal" and is not required to have "left no stone unturned." *Wright*, 455 F.3d at 708. However, the employer's decision must be reasonably informed and considered, and "when the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action . . . then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.* (quotation marks and brackets omitted). This is important because "'so long as the employer honestly believed in the proffered reason,' an employee cannot prove pretext even if the employer's reason in the end is shown to be 'mistaken, foolish, trivial, or baseless.'" *Id.* at 707–08 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)).

12

The dispute over pretext centers on Defendant's investigation of the allegations Plaintiff left a patient alone on a spine board. Plaintiff argues Defendant's investigation was inadequate because it did not interview all relevant parties (including Plaintiff) who could have provided alternate explanations of the incident. Defendant counters the investigation was reasonable and consistent with standard procedures, and asserts Plaintiff has offered no affirmative evidence linking her termination to race-based motivation or that such motivation tainted the investigation.

Plaintiff first argues Defendant's claim it fired her because of patient endangerment is inconsistent with Defendant permitting her to work at least ten additional days after the incident occurred (Court File No. 35 at 19). This, Plaintiff argues, shows Defendant was not actually concerned about patient safety, but only proffered this reason as a pretext. Anticipating Defendant's logical counter-argument (that Defendant took those ten days to conduct an investigation and follow internal procedures before terminating her to give her the "benefit of the doubt" (Court File No. 38 at 4 n.12)), Plaintiff points out Bates's admission that all directions for investigations were verbal, and there were no formal investigation procedures in place (Bates Dep. at 36). Furthermore, Plaintiff points to a genuine issue regarding whether any investigation guidelines existed at all, as Smith testified Defendant never discussed with her how to conduct pre-termination investigations, nor gave her a training course in investigation procedures (Smith Dep. at 79).

Plaintiff also introduces evidence of improprieties in the investigation process which, she contends, make it impossible for Defendant to have made a reasonably informed decision before taking its adverse employment action, as required by *Wright*. She argues Bowen relied on the second-hand knowledge of only two individuals, Tammy Ashburn and Doris McConnell, to support Spring Brandau's first-hand knowledge of the incident (Bowen Dep. at 47, 50), but that Ashburn and

13

Brandau testified differently than Bowen's investigatory notes indicate. Plaintiff also argues no supervisor interviewed her prior to the day of her termination, and that Bowen was "predisposed to believe" the comments of the other (white) employees (Bowen Dep. at 94).[7] Finally, Plaintiff alleges she had positive performance reviews in her personnel file which were missing when Smith reviewed the file and Bates made the decision to terminate her (Court File No. 35 at 18, 24; Bowen Dep. at 102). All this, Plaintiff submits, is further evidence of Defendant's failure to make a reasonably informed decision before terminating her.

For its part, Defendant argues Plaintiff's allegations amount to nothing more than her disagreement with the hospital's decision to terminate her, and that she has failed in her ultimate burden to show that race, not patient safety concerns, motivated the termination (Court File No. 38 at 4–5). Defendant asserts Bowen took reasonable steps to investigate the April 6, 2008 incident, including attempting to get in touch with everyone who was on shift at the time, corroborating Brandau's testimony with that of Ashburn and McConnell, speaking with the attending physician, and discussing the situation with Smith, Barnes, and Bates (*id.* at 6). Defendant also contends it offered a clear, specific reason for Plaintiff's termination—the results of the investigation showing Plaintiff created a serious safety issue (*id.* at 8).[8] Finally, Defendant maintains "Plaintiff has offered *no* evidence to link her termination to a *race-based* motivation on the part of the Defendant" (*id.* at

---

[7]Defendant counters that although Bowen was predisposed to believe reports Plaintiff had left her assigned work area, she was more ready to believe those comments "because [she] had witnessed it [herself]." (Bowen Dep. at 94.)

[8]Defendant offers this argument to rebut Plaintiff's reliance on *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88 (6th Cir. 1982), where the Sixth Circuit rejected completely subjective reasons as justifications not to rehire a minority employee, and demanded instead specific reasons to satisfy the *McDonnell Douglas* framework. *Id.* at 96–97. Defendant contends the investigation results satisfy the demand for specificity placed on it by *Rowe*.

14

9) (emphasis in original) and hence failed in her burden to show race was the motivating factor behind her termination.

Defendant misapprehends the burden required of a plaintiff to show pretext in a racial discrimination suit. Besides showing the factual falsity of the defendant's articulated legitimate, nondiscriminatory reason, or that the reason did not actually motivate discharge, a plaintiff may also prove pretext by establishing the employer's reasons were insufficient to motivate the employment action. *Vincent*, 514 F.3d at 497; *Haughton v. Orchid Automation*, 206 F. App'x 524, 533 (6th Cir. 2006). This requires a plaintiff only to adduce enough "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Plaintiff has produced such admissible evidence by alleging she witnessed other incidents where other employees were not fired for leaving patients alone on spine boards. Moreover, inconsistencies in an employer's explanation for different treatment "must be drawn, at summary judgment, in favor of the nonmovant." *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 468 (6th Cir. 2003). "In a 'close case' where both sides have adduced weighty evidence and the court cannot decide as a matter of law whether the employer's proffered reason is legitimate or pretextual, the issue must be submitted to a jury." *Haughton*, 206 F. App'x at 533 (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 869 (6th Cir. 2003)). Here, though Defendant has produced evidence its investigation prior to terminating Plaintiff was reasonable and properly conduct, Plaintiff has enough evidence—particularly of the lack of standard investigative procedures and failure to consider her positive performance reviews—from which a jury could find Defendant's decision was not reasonably informed, as required by *Wright*, 455 F.3d at 708.

15

Accordingly, though the case is close, a genuine issue for jury resolution exists regarding whether Defendant's reasons for termination were pretextual. The Court will thus deny Defendant's motion for summary judgment on Plaintiff's race discrimination claim.

### B. Gender and Pregnancy Discrimination

Plaintiff also claims Defendant discriminated against and terminated her on account of her pregnancy and gender (Court File No. 21 ¶¶ 42, 48). Under Title VII and the THRA, it is an unlawful discriminatory practice for an employer to discharge an individual because of her pregnancy. 42 U.S.C. §§ 2000e-2(a)(1), 2000-e(k); Tenn. Code Ann. § 4-21-401(a)(1); *Spann v. Abraham*, 36 S.W.3d 452, 463–64 (Tenn. Ct. App. 1999). Because Congress enacted the PDA to amend Title VII to include discrimination on the basis of pregnancy, such claims are analyzed in the same manner as any other Title VII sex discrimination claim. *Boyd v. Harding Acad.*, 88 F.3d 410, 413 (6th Cir. 1996). And, as with race discrimination, Plaintiff may show gender or pregnancy discrimination either by direct evidence or by circumstantial evidence giving rise to an inference of discrimination. *Talley*, 61 F.3d at 1246.

The extent of Plaintiff's evidence of gender/pregnancy discrimination appears to be her deposition testimony that she believes it is possible her pregnancy "could have had something to do with" the fact she was terminated (Andrews Dep. at 226). But she also testified it was a "fair enough" conclusion her termination was unrelated to her pregnancy (*id.*). Plaintiff further testified she told some of Defendant's employees she was pregnant, though none of those employees were involved in the investigation which precipitated Plaintiff's termination. Finally, when asked if she believed she was terminated because she is a woman, Plaintiff responded she did not (*id.* at 224).

Thus, there is no direct evidence from which a finder of fact could conclude Plaintiff suffered

16

pregnancy or gender discrimination. Additionally, a prima facie case of pregnancy discrimination requires the employee to demonstrate her employer had actual knowledge of her pregnancy at the time the adverse employment action was taken. *Prebilich-Holland v. Gaylord Entm't Co.*, 297 F.3d 438, 444 (6th Cir. 2002). Here, Plaintiff asserts she told fellow employees of her pregnancy, but none of those involved in the investigation of the April 8, 2006 incident—that is, those involved in her termination—appears to have known of it. She offers no further evidence pregnancy played a role in her termination, and does not offer any further evidence or refutation of Defendant's motion for summary judgment on her pregnancy/gender discrimination claims in her response (Court File No. 35). The Court, therefore, cannot conclude there is a genuine issue of material fact as to gender or pregnancy discrimination, and accordingly will grant Defendant's motion for summary judgment on that claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Defendant's motion for summary judgment on Plaintiff's race discrimination claim, and will **GRANT** Defendant's motion for summary judgment on Plaintiff's gender and pregnancy discrimination claim.

An order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**